IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| VERNON BENNETT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-071 |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant.[1] | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.    BACKGROUND

Plaintiff applied for SSI on January 14, 2021, and he alleged a disability onset date of March 1, 2014, which he later amended to January 14, 2021. Tr. ("R."), pp. 35, 54-55, 80, 266. Plaintiff was forty-three years old on his amended disability onset date, and was forty-six years

---

[1]Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Frank Bisignano, Commissioner of Social Security Administration, as the proper Defendant.

old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration.[2] R. 45, 266. Plaintiff alleged disability due to bipolar disorder, post-traumatic stress disorder (PTSD), paranoid schizophrenia, dislocated disc in back, dislocated right knee, head injuries from a slip and fall, dislocated right shoulder, asthma, heart murmur, and borderline diabetes. R. 94, 284. Plaintiff reported completing the ninth grade, (R. 56), and prior to his alleged disability date, he had no past relevant work, (R. 56, 74).

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 80-121. Plaintiff requested a hearing before an ALJ, (R. 132-33), and the ALJ held a hearing on December 7, 2023, (R. 50). Represented by counsel, Plaintiff appeared and testified, as did a vocational expert ("VE"). R. 50-79. On February 28, 2024, the ALJ issued a decision finding Plaintiff not disabled.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 14, 2021, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder, depression, anxiety, PTSD, and degenerative joint disease of the right shoulder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant is further limited by the following: frequently climbing stairs and ramps; occasionally climbing

---

[2]The relevant period of disability consideration for an SSI application is the month of the application through the date of the administrative law judge's decision. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*).

ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; frequently reaching overhead with the right upper extremity; avoiding concentrated exposure to hazards, temperature extremes, fumes, odors, dusts, and gases. The claimant is able to perform and sustain simple, routine, repetitive tasks for two-hour periods throughout an 8-hour workday; interact occasionally with supervisors and coworkers; interact less than occasionally with the general public; and adapt to occasional changes in a routine work setting. The claimant has no past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including representative occupations such as plumbing hardware assembler, paper inserter, and proofreader helper (20 C.F.R. §§ 416.969 and 416.969a). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since January 14, 2021, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 37-45.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 27-31), the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand, arguing the ALJ improperly evaluated the medical opinion concerning Plaintiff's mental limitations provided by Louis Barton, M.D. See Pl.'s Br., doc. no. 15; Pl.'s Reply, doc. no. 17. The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See Comm'r's Br., doc. no. 16.

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff alleges the RFC is not supported by substantial evidence because the ALJ concluded Dr. Barton's opinion was only "somewhat persuasive," (R. 43), and the ALJ failed to include all of Plaintiff's mental limitations in the RFC. In particular, Plaintiff contends the ALJ relied on "unjust characterizations of the treatment record" and failed to consider the "fluctuating nature" of mental impairments when discounting Dr. Barton's opinion as not entirely consistent with the record. Pl.'s Br., pp. 9-13; Pl.'s Reply, p. 1. The Commissioner counters that Plaintiff's preferred characterization of the evidence does not necessitate remand because the ALJ's thorough review of the entire record supports the RFC formulation, and Plaintiff is simply inviting the Court to reweigh the evidence and reach a different result. Comm'r's Br., pp. 5-11. As explained below, the ALJ's opinion is supported by substantial evidence.

#### A. Standards for Evaluating Medical Opinions

"For claims filed on or after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) or prior administrative medical finding(s). This regulation abrogated our earlier precedents applying the treating-physician rule, which required good cause to discount a treating physician's opinion." Sturdivant v. Soc. Sec. Admin., Comm'r, No. 22-13952, 2023 WL 3526609, at *3 (11th Cir. May 18, 2023) (*per curiam*) (citations and internal quotes omitted); 20 C.F.R. § 416.920c(a) (explaining ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources"); see also Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir. 2022) (explaining 2017 revision eliminated the treating-physician rule

5

and prohibits ALJs from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)" (citations omitted)).  Elimination of the treating source rule is intended to remove "confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).  Courts recognize the new regulations erect a framework that is highly deferential to the Commissioner.  See Cummings v. O'Malley, CV 323-074, 2024 WL 2324868, at *7 (S.D. Ga. May 22, 2024) (citations omitted), *adopted by* 2024 WL 2979552 (S.D. Ga. June 13, 2024) (Bowen, J.).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  Harner, 38 F.4th at 897; 20 C.F.R. § 416.920c(c)(1)-(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  See Hernandez v. Soc. Sec. Admin., Comm'r, No. 24-11710, 2025 WL 1541282, at *2 (11th Cir. May 30, 2025) (*per curiam*); 20 C.F.R. § 416.920c(b)(2).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and is consistent with the other medical and nonmedical sources in the record.  See Hernandez, 2025 WL 1541282, at *2; 20 C.F.R. § 416.920c(c)(1)-(2).

"Supportability" under the regulations refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

6

persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" under the regulations refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 416.920c(c)(2). Stated otherwise, "the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." Lewno v. Kijakazi, No. 8:21-CV-1334, 2022 WL 3999282, at *4 (M.D. Fla. Sept. 1, 2022) (citations omitted).

    **B.    The ALJ's Analysis of Dr. Barton's Opinion Is Supported by Substantial Evidence**

Dr. Barton provided a "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)," dated October 30, 2023, which the ALJ found only "somewhat persuasive because it is not entirely consistent with the overall evidence, including his own findings." R. 43 (citing Ex. D14F (R. 756-58)). The ALJ acknowledged Dr. Barton found Plaintiff's "ability to do work-related activities was either fair or poor in all areas." R. 43. The ALJ further noted Dr. Barton's opinion that Plaintiff's "ability to function was poor with regard to maintaining attention for a two-hour segment and carrying out detailed instructions," as well as indicating Plaintiff "would be absent from work more than three times a month." R. 43. Plaintiff argues that because the VE testified a person with such an inability to maintain attention for two-hour segments and who would be absent from work for more than three days per month, would be precluded from competitive employment, (R. 77-78), the ALJ's improper consideration and

7

ultimate discounting of Dr. Barton's mental limitations warrants remand. Pl.'s Br., pp. 13-14. The Court disagrees.

Here, the ALJ provided a lengthy and sifting analysis of Plaintiff's mental impairments and prior treatment history before evaluating Dr. Barton's opinion rendered in October 2023. R. 38-42. After summarizing Dr. Barton's opinion, the ALJ explained her conclusion the opinion was only somewhat persuasive based on inconsistency with the overall evidence, including Dr. Barton's own findings:

> Dr. Barton's mental status examinations noted the claimant's limited immediate and recent memories, below average intelligence, and concentration problems. While this suggests some limitation, it should be noted that the remaining objective findings were within normal limits, including euthymic mood, goal-directed thought process, fair insight and judgment, and fair past memory (*see Exhibits D7F/12, 14-15, 24-25; D8F/30, 32-33, 35, 37-38, 39-40*). In addition to mostly normal mental status examinations, the record further demonstrates that the claimant's symptoms improved with several of the medications he was prescribed. Thus, the record shows that the claimant's functioning improved with consistent treatment because his hallucinations, flashbacks, and panic symptoms abated, while his mood stabilized (*see Exhibits D4F/5; D8F/24; D9F/5; D11F/1; D12F/43*). For the reasons discussed here and elsewhere, the undersigned no[t]es that Dr. Barton's opinion is not entirely consistent with the record as it does not adequately consider the efficacy of the claimant's treatment, which is detailed in the overall evidence.

R. 43; see also R. 38-42. The phrases "[f]or the reasons discussed here and elsewhere," is critical because the discussion preceding this quote contains ample analysis of Plaintiff's records, which demonstrates the inconsistency in the record between Dr. Barton's work-preclusive opinion and points out why the restrictive opinion is not supported by Dr. Barton's own findings.

The ALJ conducted an extensive review of the record of Plaintiff's treatment leading up to Dr. Barton's October 2023 restrictive opinion. The ALJ noted where Plaintiff stated he was doing well and his symptoms abated when he took his medication. R. 40 (citing Ex.

8

D12F/23, 33 (R. 723, 733).) Medication stopped Plaintiff's hallucinations, flashbacks, and panic symptoms, and his mood stabilized. R. 40-41 (citing Exs. D4F/5-6 (R. 552-53); D8F/24 (R. 646); D9F/5 (R. 670); D11F/1 (R. 693); D12F/43 (R. 743).) Plaintiff further expressed an intention to continue with his medications because they were working well. R. 43 (citing Ex. D12F/43 (R. 743).) In summarizing this extensive review prior to the specific evaluation of Dr. Barton's opinion, the ALJ summarized, "The medical evidence of record demonstrates that the claimant experienced psychological symptoms, such as hallucinations and depression. However, his medications mitigated his symptoms." R. 42. This detailed discussion of Plaintiff's treatment records at step four of the sequential process came after the ALJ had already extensively cited Plaintiff's treatment as part of the review of the Paragraph B criteria at steps two and three of the sequential process. R. 38-39.

Once the ALJ specifically reached Dr. Barton's opinion, she particularly noted the restrictive nature of the findings, which determined Plaintiff's ability to do work-related activities was either fair or poor in all areas, was not entirely consistent with the overall evidence, including his own findings. R. 43. As set forth above, the ALJ cited to Dr. Barton's own treatment records showing that although Plaintiff had limited immediate and recent memories, below average intelligence, and concentration problems, remaining objective findings were largely within normal limits, including euthymic mood, goal-directed thought processes, fair insight and judgment, and fair past memory. R. 43 (citing Exs. D7F & D8F (R. 606, 608-09, 618-19, 652, 654-55, 657, 659-60, 661-62).) The ALJ also specifically referenced – as was discussed in the analysis preceding the discussion of Dr. Barton's opinion and noted herein – Plaintiff's functioning improved when Plaintiff consistently took his medications because his "hallucinations, flashback, and panic symptoms abated, while his

9

mood stabilized." R. 43. Thus, the ALJ repeatedly noted throughout the opinion that Plaintiff's psychological symptoms responded to consistent treatment that showed an ability to function above the level of restrictions opined by Dr. Barton.

Plaintiff's reliance on Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094 (11th Cir. 2021), for the proposition the ALJ ignored the fluctuating nature of mental impairment misses the mark. Pl.'s Br., pp. 11-13; Pl.'s Reply, pp. 1-2. First, the facts of Simon reflect a significant failure on the part of the ALJ to consider the claimant's bipolar disorder in a meaningful way. The ALJ in Simon improperly relied on "snapshots" of medical evidence and "isolated entries" in treatment notes to discredit a doctor's diagnosis of "a severe combination of bipolar disorder, depression, and anxiety, accompanied by symptoms considerably more serious than those acknowledged by the ALJ." 7 F.4th at 1106. The ALJ's discussion of the challenged doctor's treatment notes in only one paragraph was a "complete failure to engage with significant portions of [the doctor's] clinical findings," which bordered on a blatant mischaracterization of the record. Id. Here, in contrast, the ALJ did discuss the range of Plaintiff's mental health impairments, including identifying bipolar disorder, depression, anxiety, and PTSD as severe impairments at step two of the sequential process, (R. 37), as well as acknowledging the episodes of increased depression and anxiety, (R. 38, 41-42), to which Plaintiff points as evidence that the ALJ failed to appreciate "the inherent complexity and subjective [sic] of mental illness." Pl.'s Br., p. 13. Not only did the ALJ appropriately recognize and appreciate the fluctuations in Plaintiff's mental health by incorporating some limitations in the RFC to account for mental limitations supported by the record, but she also extensively discussed the range of impairments and responsiveness to treatment. See Griffith v. Comm'r of Soc. Sec., No. 22-13903, 2024 WL 3024922, at *4-5 (11th Cir. June 17, 2024) (*per curiam*) (acknowledging

standard of deferential review and rejecting argument ALJ did not account for waxing and waning nature of mental disorders where administrative opinion showed ALJ properly accounted for unpredictability and did not focus on mere snapshots by incorporating limitations on in-person interactions with others in RFC).

Second, the record in Simon reflected consistent severity or worsening of the claimant's symptoms, not the overall stability with consistent adherence to a medical regimen like that shown in Plaintiff's medical records. See Simon, 7 F.4th at 1099 (describing medical evidence reporting claimant "'has been in a critical state of mind for several years now,' and his condition 'will only get worse' with time"). Indeed, in the August 31, 2023 treatment notes to which Plaintiff points as evidence of his increased depression and anxiety, he stated he would like to return to Invega if possible and rated his "depression 8 and 10," the same rating given on May 4, 2023, when he reported his depression at 10/10 and anxiety at 8/10 but also stated "he feels like his meds are helping." R. 701-702. The October 5, 2023 notes to which Plaintiff points as documenting his self-reported anxiety depression at 10 out of 10 and hearing hallucinating noises, (Pl.'s Br., p. 12), also document a family member reporting Plaintiff does "much better" when taking medicine by injection, and Plaintiff having "euthymic affect," which also suggests a stable and balanced emotional state. R. 744. The evidence of record in Plaintiff's case simply does not reflect the worsening of unacknowledged symptoms in Simon.[3]

---

[3]For the sake of completeness, the Court also notes Simon relied on the treating physician rule which does not apply to claims filed after March 27, 2017, such as Plaintiff's. See Harner, 38 F.4th at 897 (explaining after 2017 elimination of treating-physician rule, ALJs prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)" (citations omitted)).

11

As described above, the ALJ's opinion contains an extensive discussion of the medical evidence of record - from other providers as well as from Dr. Barton's own treatment records - which contradicts Dr. Barton's restrictive opinion and provides substantial evidence for concluding it was only somewhat persuasive.  The ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review. See Gogel v. Comm'r of Soc. Sec., Case No. 2:20-cv-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)).  "What matters is whether the ALJ 'state[s] with at least some measure of clarity the grounds for his [or her] decision.'" Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1266 & n.14 (11th Cir. 2024) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see also Thaxton v. Kijakazi, No. 1:20-CV-616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." (citation omitted)).  Well beyond "some measure of clarity," in one of the most extensive, through reviews of the record evidence this Court has seen, the ALJ provided ample information to conduct meaningful judicial review.  Indeed, the ALJ provided more than sufficient clarity as to the grounds for finding Dr. Barton's opinion not fully persuasive, and substantial evidence supports that decision.

In a nutshell, Plaintiff asks this Court to take a different view of the evidence than did the ALJ by contending there was some evidence supporting and consistent with Dr. Barton's opinion.  Pl.'s Br. pp. 9-13; see generally Pl.'s Reply.  However, as the Commissioner

persuasively argues, Plaintiff highlighting his preferred evidence and interpretation thereof does not compel the Court to re-evaluate the ALJ's summarization and evaluation of the record and opinion evidence to reach a different conclusion. Comm'r's Br., p. 10. This Court's job is not to review the administrative record *de novo* or re-weigh the evidence, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Moore, 405 F.3d at 1211, 1213; Crawford, 363 F.3d at 1158-59. That a different result is *possible*, does not mean the Commissioner's decision must be reversed. The Commissioner's findings, via the ALJ's decision, are supported by substantial evidence, and Plaintiff's argument concerning the consideration of Dr. Barton's opinion does not form any basis for reversal or remand.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of July, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA